IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTA FLEMING and DEMETRIOUS )
FLEMING, husband and wife, )
)
    Plaintiffs )    Case No. 1:19-cv-00113 (Erie)
)
vs. )
)    RICHARD A. LANZILLO
)    UNITED STATES MAGISTRATE JUDGE
PENNSYLVANIA DEPARTMENT OF )
CORRECTIONS, and )
SUPERINTENDENT MICHAEL R. )
CLARK, RYAN SZELEWSKI, DEPUTY )    MEMORANDUM OPINION AND
SUPERINTENDENT PAUL ENNIS, )    ORDER ON DEFENDANTS' MOTION
LIEUTENANT FLOYD, )    TO DISMISS
MAILROOM SUPERVISOR TAMMY )
WHITE, CAPTAIN HOWIE SISSEM, )
CAPTAIN EARL JONES, LIEUTENANT )    ECF NO. 22
OCHS, MICHELLE THARP, Grievance )
Coordinator, and MAJOR MEURE, )
each in his/her official and individual )
capacity, )
)
    Defendants[1] )
)

    Plaintiffs Christa Fleming and Demetrious Fleming (collectively Plaintiffs) filed this civil

rights lawsuit, *pro se*, against the Pennsylvania Department of Corrections (DOC) and the following

ten individual DOC employees, each of whom Plaintiffs sued in his or her official and individual

capacities: Superintendent Michael R. Clark, Hearing Examiner Ryan Szelewski, Deputy

Superintendent Paul Ennis, Lieutenant Floyd, Mailroom Supervisor Tammy White, Captain Howie

Sissem, Captain Earl Jones, Lieutenant Ochs, Michelle Tharp, Grievance Coordinator, and Major

Meure (collectively Defendants).[2] Defendants move to dismiss Plaintiffs' Second Amended

---

[1] The name of the defendant identified as "Ryan Slewiski" is misspelled. The caption is amended to properly identify him as "Ryan Szelewski."

[2] Defendants John Wetzel and SCI-Albion RHU Guard were previously terminated from the case.

Complaint.  For the reasons that follow, Defendants' motion will be GRANTED.  Counts One, Two, Four, and Five of the Second Amended Complaint will be DISMISSED WITH PREJUDICE, and Count Three will be DISMISSED WITHOUT PREJUDICE.  Plaintiffs will have an opportunity to cure the deficiency at Count Three by filing a further amended complaint.

I.      Introduction

        Demetrious Fleming is a prisoner currently – and at all times relevant – incarcerated at the State Correctional Institute at Albion, Pennsylvania (SCI-Albion).  Christa Fleming is his spouse. Plaintiffs initiated this civil rights action by filing their initial Complaint on April 23, 2019.  ECF No. 1.  On July 23, 2019, Plaintiffs filed a request for entry of default judgment, which was entered by the Clerk of Court.  ECF Nos. 5, 6, 7.  The next day, July 24, Plaintiffs filed a Motion for Default Judgment (ECF No. 8), which the Court denied on July 26, 2019.  ECF No. 10.  On August 1, 2019, Plaintiffs filed an Amended Complaint and exhibits in support thereof.  ECF Nos. 11, 12.  Plaintiffs moved for leave to amend this Amended Complaint on August 21, 2019, and the Court granted their request.  ECF Nos. 15, 16.  Accordingly, on August 21, 2019, Plaintiffs filed the Second Amended Complaint (ECF No. 17), which is the operative complaint in this litigation.  The Second Amended Complaint asserts claims pursuant to 42 U.S.C. §1983 for violations of Plaintiffs' rights under the First, Fourteenth, and Eighth Amendments to the United States Constitution. Defendants have moved to dismiss the Second Amended Complaint in its entirety for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) and have filed a brief in support thereof.  ECF Nos. 22, 23.  Plaintiffs subsequently moved to strike Defendants' Motion to Dismiss as untimely and again moved for default judgment.  ECF Nos. 28, 34.  After the Court denied these motions (ECF Nos. 32, 36), Plaintiffs filed a Brief in Opposition. ECF No. 37.  The matter is now ready for disposition.[3]

---

[3] The parties have consented to the jurisdiction of a United States Magistrate Judge.  *See* ECF Nos. 27, 29, 30.

II.   Legal Standards

A.   Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employees' Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pa.*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (quoting *Iqbal*, 556 U.S. at 678)).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

B.      Pro Se Pleadings

For purposes of a motion to dismiss, a court must employ less stringent standards in considering *pro se* pleadings than when judging the work product of an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). However, even a *pro se* plaintiff must be able to prove a "'set of facts in support of his claim which would entitle him to relief.'" *Haines*, 404 U.S. at 520-21 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Finally, the United States Court of Appeals for the Third Circuit, in *Phillips v. County of Allegheny*, has ruled that if a District Court is dismissing a claim under

4

Rule 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

With these standards in mind, the Court now turns to a review of Plaintiffs' claims against the Defendants.

III.    The Second Amended Complaint

Plaintiffs' claims arise from a series of events beginning on May 31, 2018, when officials at SCI-Albion confiscated a piece of mail that Christa Fleming had sent to her husband during his incarceration at that institution. ECF No. 17, ¶¶ 61-64. By way of summary, and taken as true, Plaintiffs' Second Amended Complaint alleges that, on June 1, 2018, SCI-Albion officials placed Demetrious Fleming in a secured holding cell, claiming that the mail confiscated the previous day contained the synthetic drug K-2. He was taken to the Restricted Housing Unit (RHU) and issued Misconduct No. 8829664. Id. ¶¶ 73-76. Mr. Fleming has consistently maintained that the mail he received did not contain K-2. On June 4, 2018, Mr. Fleming received notice, dated June 1, that Ms. Fleming was permanently banned from all Pennsylvania Department of Corrections facilities. Id. ¶¶ 87-89.

On June 6, 2018, Hearing Examiner Ryan Szelewski conducted a disciplinary hearing regarding these events. No witnesses were called at this hearing, and Mr. Fleming was not shown any laboratory results demonstrating that his mail contained contraband. Id. ¶ 103. Mr. Szelewski found that Mr. Fleming violated prison regulations by possessing drug contraband and sentenced him to 75 days in disciplinary custody. Id. ¶ 106. Mr. Fleming appealed, and although the sanctions were ultimately reduced to 55 days in disciplinary custody, the misconduct was upheld. Id. ¶¶ 109-10. Demetrious Fleming was released from the RHU on July 10, 2018. However, upon completion of an inventory of Mr. Fleming's property, it was determined that a grey footlocker containing

sentimental photographs, mail, and legal material was missing.  A missing property form was completed and a grievance was filed.  *Id.* ¶¶ 120-22, 127.

On August 7, 2018, Misconduct No. 8829664 was vacated by the DOC.  *Id.* ¶¶ 130-31.  Mr. Fleming subsequently inquired as to the status of his wife's visitation privileges, and, on September 12, 2018, he filed a formal request to have Ms. Fleming's visitation privileges restored. *Id.* ¶¶138-43.  On December 17, 2018, Plaintiffs were informed that additional testing of the confiscated mail was negative for illegal substances.  *Id.* ¶ 162.  At some time thereafter, Ms. Fleming's visitation privileges were restored.  *Id.* ¶ 163.  Plaintiffs further assert that Mr. Fleming had previously filed grievances and/or requests to the mailroom at SCI-Albion regarding his mail being delayed, withheld, and/or confiscated on or about September 12, 2013, November 9, 2015, February 14, 2017, and March 14, 2018.  *Id.* ¶¶57-60.

Based on these factual allegations, Plaintiffs raise five counts seeking declarative, injunctive and monetary relief:[4]

> ➢ Count One alleges that Defendants Clark, Ennis, Szelewski, and Floyd violated Plaintiffs' procedural due process rights by failing to provide adequate notice or opportunity to be heard in regard to the false allegations that Plaintiffs attempted to introduce K-2 into SCI-Albion and by, instead, relying on the NARK II field test kit. *Id.* ¶¶ 169-89.

> ➢ Count Two alleges that Defendants Clark, Ennis, Szelewski, and Floyd violated Plaintiffs' Fourteenth Amendment due process rights by impeding Plaintiffs' right to familial relationships and integrity.  *Id.* ¶¶ 190-95.

---

[4]  As noted by Defendants, none of the counts set forth in the Second Amended Complaint raise any claims against Defendant Michelle Tharp or against the DOC.  The Court further notes that, in any event, the DOC would be entitled to immunity under the Eleventh Amendment.  *See Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 195 (3d Cir. 2000).

➤ Count Three alleges that Defendants Clark, Ennis, Floyd, Sissem, Jones, and White

violated Plaintiffs' First Amendment rights by infringing on Plaintiffs' right to freedom

of speech and association. *Id.* ¶¶ 196-203.

➤ Count Four alleges that Defendants Clark, Ennis, Meure, and Ochs violated

Demetrious Fleming's First Amendment rights by intentionally or negligently losing his

property. *Id.* ¶¶ 204-12.

➤ Count Five alleges that Defendants Clark, Szelewski, Jones, and Floyd violated

Plaintiffs' Eighth and Fourteenth Amendment rights by relying on the NARK II field

test kit in disciplining Mr. Fleming and banning Ms. Fleming from visiting him. *Id.* ¶¶

213-41.[5]

IV.   Discussion

Plaintiffs purport to raise each of their claims pursuant to § 1983, which provides, in relevant

part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege facts sufficient to establish

"the defendant, acting under color of state law, deprived him or her of a right secured by the

Constitution or the laws of the United States." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir.

2006).  Section 1983, by its own terms, creates no substantive rights, but rather provides a means for

plaintiffs to seek relief for the deprivation of rights established by the Constitution or federal laws.

---

[5] Plaintiffs also raise a claim under *Monell v. Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  However, in light of Defendants' Motion to Dismiss, they have withdrawn that claim. ECF No.37, p. 21.

*See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Accordingly, "[t]he first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Id.* at 140. Applying this standard, and accepting as true all well-pled factual allegations in the Second Amended Complaint and viewing them in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed adequately to plead that they were deprived of any rights secured by the Constitution or federal laws. The Court will, however, as explained below, allow Plaintiffs leave to amend Count Three to meet the applicable pleading standard.

      A.      Counts One and Two of the Second Amended Complaint fail to state a claim against any defendant on behalf of Christa Fleming.

At Counts One and Two, Christa Fleming alleges that Defendants Clark, Ennis, Szelewski, and Floyd deprived her of her procedural due process rights under the Fourteenth Amendment. The claims center around Ms. Fleming's contention that she was banned from visiting her husband at SCI-Albion and all other DOC facilities beginning on or around June 1, 2018. She alleges that the actions taken by the above-named defendants occurred without adequate notice or an opportunity for her to be heard, and that their actions impeded her and her husband's familial relationships and integrity by leading Mr. Fleming to believe that Ms. Fleming had "set him up" by sending K-2 to the prison as part of mail addressed to him.

Defendants argue that Christa Fleming's claims set forth in Counts One and Two must be dismissed because the Due Process Clause of the Fourteenth Amendment does not provide her with a constitutional right to visit her husband while incarcerated and that, even if she could establish a constitutional right, the decision to ban her from visiting Mr. Fleming was reasonably related to legitimate penological interests. ECF No. 23, pp. 3-12, 14. Indeed, the only tangible action that Ms. Fleming alleges the above-named defendants took against her was to permanently ban her from any

DOC facility.[6] As Defendants argue, and as Plaintiffs acknowledge, courts have consistently held that the Fourteenth Amendment does not provide convicted prisoners or their families with any general constitutional right to prison visitation. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460-61 (1989); *Overton v. Bazetta*, 539 U.S. 126, 131 (2003); *Pfender v. Sec. Pa. Dep't of Corrs.*, 443 Fed Appx. 749, 752 (3d Cir. 2011); *Henry v. Dep't of Corrs.*, 131 Fed. Appx. 847, 849 (3d Cir. 2005). Ms. Fleming, therefore, would have to establish some other basis for alleging that she was deprived of protected rights.

While admitting that visitation is not a protected right, Ms. Fleming argues that her claims are broader and encompass the "novel issue" of family relationships and integrity. ECF No. 37, pp. 3-13. She alleges that her claims go beyond the right of visitation and asserts that the above-named defendants' actions interfered with her right of familial relationships and integrity. In so arguing, she claims that not only were her visitation rights curtailed, but that the above-named defendants also led Mr. Fleming to believe that she had purposefully sent contraband to him in prison. As Defendants point out, however, courts have been hesitant to identify and apply a right of familial integrity as it relates to the effects of imprisonment on family life. *See, e.g., Shick v. Pa. Dep't of Corrs.*, 2019 WL 4016139, *5 n.2 (W.D. Pa. Aug. 26, 2019); *Bazetta v. McGinnis*, 902 F. Supp. 765, 770-71 (E.D. Mich. 1995). Indeed, "[p]rison necessarily disrupts the normal pattern of familial association, so lawful imprisonment can hardly be thought a deprivation of the right of relatives to associate with the imprisoned criminal." *Navin v. Iowa Dep't of Corrs.*, 843 F. Supp. 500, 503 (N.D. Iowa 1994). This is consistent with case law establishing that prisoners do not retain those constitutional rights that are incompatible with incarceration or that are inconsistent with penological objectives of the corrections system. *See Johnson v. California*, 543 U.S. 499, 510 (2005)

---

[6] Although Plaintiffs often refer to the ban as a permanent one, they acknowledge that the ban was lifted prior to the filing of this suit. ECF No. 17, ¶ 163.

(citing *Overton*, 539 U.S. at 131).  It is therefore questionable, at best, whether Ms. Fleming has a familial integrity right implicated in this case.

Ultimately, however, it does not matter whether Christa Fleming has pled any legitimate constitutional rights because, in any event, decisions by a correctional facility regarding conditions of confinement, such as a denial of visitation privileges, will be upheld against constitutional challenges if they bear a rational relationship to legitimate penological interests.  *See Overton*, 539 U.S. at 132. "Substantial deference" is given to the professional judgement of prison administrators in making this determination.  *Id.*  In conducting this analysis, courts must consider: "(1) the connection between the prison decision and the governmental interest supported; (2) the existence of alternative means of exercising the abridged right; (3) the impact of accommodation of the abridged right on prison resources; and (4) the absence of alternatives for exercising the right at *de minimis* cost to penological interests."  *Shick*, 2019 WL 4016139 at *5 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

Defendants assert that the decision to bar Ms. Fleming from DOC facilities was rationally related to the legitimate penological interest of controlling the smuggling of narcotics into the prison.  Courts have consistently found that such an interest is a legitimate penological one and that, based on the above factors, limitations of visitation privileges are rationally related to this interest. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 327 (2012); *Block v. Rutherford*, 468 U.S. 576, 586 (1984); *Henry*, 131 Fed. Appx. at 851.  Indeed, courts have long noted that prison "is a unique institution fraught with sensitive security hazards, not the least of which being smuggling of contraband such as drugs, money, knives, etc." *Gettleman v. Werner*, 377 F. Supp. 445, 451 (W.D. Pa. 1974).  *See also Bell v. Wolfish*, 441 U.S. 520, 558-60 (1978).  As such, "prison guards must have discretion to act quickly and decisively, and other reasonable procedures in everyday

disciplinary problems should not be employed to handcuff prison guards in following the orders and directives designed to eliminate smuggling." *Gettleman*, 377 F. Supp. at 451.

As both parties acknowledge,[7] this case is similar to *Shick*, which involved comparable claims by another inmate at SCI-Albion and his spouse.  The court in that case dealt with essentially the same issue pending before this Court, *i.e.*, whether the decision of officials at SCI-Albion to restrict the visitation of an inmate's wife was rationally related to a legitimate penological interest – prohibiting the smuggling of drugs into the facility.  Examining facts very similar to those alleged here, the court in *Shick* found that the inmate's wife failed to plead a First or Fourteenth Amendment violation based on the denial of her visitation rights for allegedly mailing K-2 to her husband at SCI-Albion.  *See id.* at **4-5.  This Court agrees and finds that the decision of the above-named defendants to bar Ms. Fleming from DOC facilities because they believed she sent K-2 to the facility is rationally related to the penological interest of security and prohibiting the smuggling of contraband such as drugs.

Moreover, as the court noted in *Shick*, "[i]t is irrelevant that [Ms. Fleming] denies that she attempted to smuggle drugs into SCI-Albion."  *Id.* at *6.  As the Third Circuit explained in *Pfender*, a plaintiff's denial of culpability "does not create a triable issue on the question whether the suspension of her visiting privileges bears a rational relationship to legitimate penological interests." 443 Fed. Appx. at 753.  Accordingly, it does not matter whether Ms. Fleming did or did not actually mail K-2 to SCI-Albion; what matters is that the belief that she did was the basis for restricting her visitation privileges.

---

[7] Plaintiffs reference the *Shick* case throughout their Second Amended Complaint, which appears to have been patterned, in part, from the complaint in that case.  *Compare* ECF No. 17 *with* ECF No. 1 at Case No. 3:18-cv-00253.

For all of these reasons, the Court finds that Christa Fleming has failed to plead an actionable § 1983 claim at either Count One or Count Two. These counts will be dismissed as they relate to her.

B.     Counts One and Two fail to state a claim against any defendant on behalf of Demetrious Fleming.

Counts One and Two of the Second Amended Complaint raise the same allegations against Defendants Clark, Ennis, Szelewski, and Floyd on behalf of Demetrious Fleming as are raised on behalf of Christa Fleming. However, some of the facts raised in these counts, particularly Count One, clearly apply uniquely to Mr. Fleming. While these additional facts will require further analysis, the result remains the same – Mr. Fleming has not pled an actionable § 1983 claim at either Count One or Count Two.

To the extent that Demetrious Fleming raises the same issues regarding visitation and familial relationships and integrity, his claims fail for the same reasons that his wife's claims fail. Mr. Fleming generally does not – and does not claim to – have a Fourteenth Amendment due process right to be visited by his wife. Like Ms. Fleming, he claims instead that prohibiting him from seeing her, in conjunction with allowing him to believe that she had "set him up," interfered with his right to familial relationships and integrity. As the Court discussed at length above, even if Mr. Fleming were to establish such a right, the decision to ban Ms. Fleming from visiting him because she allegedly sent him K-2 is rationally related to the penological interest of security and prohibiting the smuggling of contraband such as drugs. As with his wife, it does not matter that Demetrious Fleming denies ever receiving the contraband. Therefore, he likewise has failed to raise a claim based on that theory.

However, as noted, there are additional facts that apply to Mr. Fleming's disciplinary notice, his hearing, and his confinement in the RHU. He alleges that he was denied adequate notice and an

opportunity to be heard as to the allegations that he had received K-2.  He asserts that he was denied the opportunity to call witnesses or otherwise offer evidence at his June 6, 2018 hearing.  He further alleges that the above-named defendants' reliance on the NARK II field test kit to initially find that he was guilty of receiving drugs violates due process based on the unreliability of the test and on the defendants' failure to properly follow the manufacturer's instructions in utilizing the test. He claims that this deprivation of his due process resulted in him receiving a misconduct and a sentence of 55 days in disciplinary confinement in the RHU.  While these allegations, taken as true, raise claims beyond those raised by Ms. Fleming, they still do not establish an actionable claim.

Courts have made it clear that prisoners in disciplinary hearings are typically not afforded due process protections because the sanctions resulting from such hearings typically do not affect a protected liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Burns v. Dep't of Corrs.*, 642 F.3d 163, 171 (3d Cir. 2011).  A prisoner's due process rights are not triggered unless the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  As the Third Circuit has noted, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the type of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).  Courts have routinely held that sanctions of disciplinary confinement of up to fifteen months do not implicate due process.  *See, e.g., Smith*, 293 F.3d at 653; *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997); *Nifas v. Beard*, 374 Fed. Appx. 241, 244 (3d Cir. 2010).

Here, Demetrious Fleming received a misconduct that was later vacated and a sanction of 55 days in restricted housing, of which he appears to have served approximately 40 days.  This does not

come close to the type of atypical deprivation required to trigger his due process rights.[8]  Again, the facts alleged in this case are very similar to those addressed in *Shick*.  There, the court found that the plaintiff's 60-day sanction to restricted confinement at SCI-Albion was insufficient to raise a claim that his Fourteenth Amendment due process rights had been violated.  This Court, again under very similar facts, finds that the same is true as to Mr. Fleming.  He has failed to plead a liberty interest for which he was entitled to due process.[9]

Therefore, the Court finds that Demetrious Fleming, like his wife, has failed to plead an actionable § 1983 claim at either Count One or Count Two.  These counts will be dismissed as they relate to him as well.

C.    Count Three, as currently constituted, fails to state a claim against any defendant, but further amendment to raise a claim of retaliation may be possible.

Count Three of the Second Amended Complaint alleges that Plaintiffs were deprived of their First Amendment rights by Defendants Clark, Ennis, Floyd, Sissem, Jones, and White.  The parties, however, characterize the nature of these claims very differently.  Defendants lump Count Three with Count One, suggesting that both allege a deprivation associated with Plaintiffs' visitation rights.  To the extent this Court were to construe this count as such, it would dismiss the claim for the same reasons it found Counts One and Two to be legally insufficient.  The First Amendment no more supports an actionable claim than does the Fourteenth Amendment under the facts set forth in those counts.  *See Overton*, 539 U.S. at 131 (stating that "freedom of association is among the rights least compatible with incarceration").

---

[8]  To the extent that Mr. Fleming alleges that the misconduct he received was falsified, "it is well settled that a prisoner does not have a procedural or substantive due process right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest."  *Mearin v. Folino*, 2013 WL 5332120, *7 (W.D. Pa. Sept. 23, 2013) (citing *Smith*, 293 F.3d at 653-54).

[9]  Since Mr. Fleming was not entitled to due process in any event, the fact that Defendants utilized the NARK II test or whether that test was reliable or properly used is irrelevant.

Plaintiffs, though, assert that Count Three raises a claim for retaliation for exercising their First Amendment rights, specifically retaliation for making complaints and filing grievances regarding the delay and/or confiscation of Mr. Fleming's prison mail.  ECF No. 37, pp. 14-17. Plaintiffs can raised such a claim despite the absence of visitation or family association rights under the First or Fourteenth Amendment because "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir. 2000) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 386 (6th Cir. 1999)).  In other words, retaliation against prisoners for the exercise of their constitutional rights is itself unconstitutional.  *See Bistrian v. Levi,* 696 F.3d 352, 376 (3d Cir. 2012).  "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"  *Hartman v. Moore,* 547 U.S. 250, 256 (2006) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)).

To state a retaliation claim, a prisoner must allege facts to demonstrate that: (1) he engaged in constitutionally protected conduct; (2) a prison official took an adverse action against him; and (3) the existence of a causal connection between the exercise of his constitutional rights and the adverse action.  *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003) (citing *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001)).  Count Three, which is not identified on its face as a retaliation claim, does not directly address these elements.  However, taken as a whole, the Second Amended Complaint alleges enough to demonstrate that further amendment of this claim may not be futile.

1.      Application to Plaintiff Demetrious Fleming

Demetrious Fleming has arguably pled the first element by alleging that he filed several requests and grievances regarding the handling of his prison mail.  ECF No. 17, ¶¶ 57-60.[10]  He further states that "Defendants would not have imposed such sanctions had Plaintiffs not inquired about [Plaintiffs'] mail being confiscated."  *Id.* ¶ 202.  However, he has not clearly identified the adverse actions taken against him or the causal connection between the adverse actions and the protected activity.  Further, to constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  *Rauser,* 241 F.3d at 333 (quoting *Allah,* 229 F.3d at 225).  While the Second Amended Complaint suggests several adverse actions, none is alleged sufficiently to support that it would deter a person of ordinary firmness from the exercise of his constitutional rights.

Likewise, even if the Court could identify the adverse actions on which Mr. Fleming attempts to rely, he has not alleged the causal connection between his alleged protected conduct and any specific adverse action taken by a specific defendant or defendants.  Such a causal connection may generally be established by showing that there is a temporal proximity between the plaintiff's protected activity and a *particular defendant's* adverse action.  The timing of the alleged retaliatory conduct, however, must be suggestive of a retaliatory motive. *See Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); *Estate of Smith v. Marasco,* 318 F.3d 497, 512 (3d Cir. 2003) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997) (holding that the temporal proximity between the protected

---

[10]  The Court does note, though, that it is not clear whether either plaintiff alleges that the mail was confiscated in retaliation for these earlier complaints or whether their complaints about the confiscation of the mail on May 31, 2018 caused the subsequent alleged retaliation.

conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link)).  Mr. Fleming alleges that he submitted several requests and grievances regarding his prison mail over the course of several years, but he does not allege any factual basis to support a causal connection between these activities and the adverse actions he claims one or more of the Defendants took against him.

Accordingly, the Court will dismiss this count without prejudice as to Mr. Fleming.  Given his *pro se* status and the allegations of the Second Amended Complaint as a whole, the Court will provide him with the opportunity to cure the deficiencies of Count Three by further amending his pleading to properly set forth a claim of retaliation.

2.     Application to Plaintiff Christa Fleming

The Court first notes that the Third Circuit has held that the spouse of a prisoner may potentially raise a valid retaliation claim even though he or she is not a prisoner, and even if he or she does not otherwise have a right of visitation.  *See Hill v. Barnacle*, 598 Fed. Appx. 55, 58 n.5 (3d Cir. 2015) (citing *Rauser*, 241 F.3d at 333; *George v. Rehiel*, 738 F.3d 562, 585 & n.24 (3d Cir. 2013); *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)).  The standard applicable to non-prisoners is the same as for prisoners.  *See Hill v. Barnacle*, 655 Fed. Appx. 142, 145 n.5 (3d Cir. 2016) (citing *Eichenlaub*, 385 F.3d at 282).  Accordingly, although not a prisoner herself, Ms. Fleming potentially may raise a valid retaliation claim.

However, as Count Three currently reads, the nature of Ms. Fleming's retaliation claim is even more vague than Mr. Fleming's.  While Ms. Fleming also identifies her purported protected activity as inquiring about her husband's prison mail, the Second Amended Complaint does not identify what, if any, specific incidents she relies upon to support her claim.  Moreover, as with Mr. Fleming, the pleading is vague concerning the adverse action or actions any specific defendant allegedly took against Christa Fleming and the causal connection between these actions and any

alleged protected activity.  Although it is not clear that Ms. Fleming can raise a valid retaliation claim based on the current record, given her *pro se* status, the Court will provide her with an opportunity to attempt to do so.

For these reasons, the Court finds that Count Three of the Second Amended Complaint fails to state an actionable § 1983 claim but that Plaintiffs may be able to cure the defects of this claim by further amendment.  Accordingly, the Court will dismiss this count without prejudice and provide Plaintiffs with the opportunity to file a third amended complaint regarding this claim.

  D. Count Four fails to state a claim against any defendant on behalf of Demetrious Fleming.

Unlike the other counts in the Second Amended Complaint, Count Four raises claims only on behalf of Demetrious Fleming.  This count asserts that Defendants Clark, Ennis, Meure, and Ochs deprived him of his First Amendment rights although it is unclear how the facts alleged within Count Four, primarily relating to the loss of his personal property, bear any relationship to Mr. Fleming's First Amendment rights.  As Defendants note, Count Four appears to raise a claim that Mr. Fleming was deprived of his Fourteenth Amendment right of due process.  ECF No. 23, p.15 n.3.  Regardless, as Defendants contend, Count Four fails to allege a constitutional violation based upon his alleged loss of property.[11]

As noted, the crux of Mr. Fleming's claim at Count Four is that the above-named defendants intentionally or negligently lost property he had placed in their care while he was being held in the RHU, including personal photographs and legal notes.  ECF No. 17, ¶¶ 205-09.  However, no due process rights are implicated where a state actor's negligent actions cause loss or damage to a

---

[11] Plaintiff alleges vaguely that he "presents a First Amendment Denial of Access to the Courts by Defendants losing or taking legal materials that were inside [the footlocker at issue]."  ECF No. 37, p. 17.  However, other than this conclusory sentence, he does not explain in any way how Count Four could be construed as having raised such a claim.  These conclusory allegations are entitled to no weight in deciding a motion to dismiss.  *See Santiago*, 629 F.3d at 131 (holding that the Court should disregard "'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Iqbal*, 556 U.S. at 678)).

prisoner's property. *See Hernandez v. Corrs. Emergency Response Team*, 771 Fed. Appx. 143, 144 (3d Cir. 2019) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). Therefore, allegations that SCI-Albion personnel negligently lost his property fail to raise an actionable § 1983 claim.

Moreover, even allegations that the defendants intentionally lost his property will not suffice here. The intentional deprivation of property by a prison official does not violate the Due Process Clause where the prisoner has a meaningful post-deprivation remedy available to him. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Freeman v. Dep't of Corrs.*, 447 Fed. Appx. 385, 387 (3d Cir. 2011); *Mearin*, 2013 WL 5332120 at *7 (citing *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008)). Therefore, Mr. Fleming would have to allege and establish that he was not afforded an adequate post-deprivation remedy to raise his claim at Count Four. *See Mearin*, 2013 WL 5332120 at *7. However, access to the prison's grievance process or the ability to file a state tort action generally constitute adequate remedies. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000); *Tapp v. Proto*, 404 Fed. Appx. 563, 567 (3d Cir. 2010). Mr. Fleming does not allege that he was denied access to SCI-Albion's inmate grievance system, and, in fact, acknowledges that he filed a grievance in relation to the loss of his property. ECF No. 17, ¶ 127; ECF No. 17-1, Exs. 41-47. Exhibits 44 through 47 to the Seconded Amended Complaint, in fact, indicate that he has received some compensation for his lost property. As such, Mr. Fleming cannot maintain a § 1983 action for his lost property.[12]

Therefore, the Court finds that Demetrious Fleming has failed to plead an actionable § 1983 claim at Count Four. This count will be dismissed.

---

[12] In his brief, Mr. Fleming seems to imply that he is seeking relief for his lost property under state law, as he asserts that this Court has supplemental jurisdiction over such claims under 28 U.S.C. § 1367. ECF No. 37, pp. 18-20. However, no such claim is raised in the Second Amended Complaint.

E.      Count Five fails to state a claim against any defendant.

Count Five asserts a claim that Defendants Clark, Szelewski, Jones, and Floyd deprived

Plaintiffs of their Eighth and Fourteenth Amendment rights and also purports to raise a claim under

*Monell v. Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  However, Plaintiffs indicate in their brief

that they are withdrawing that *Monell* claim.[13]  ECF No. 37, p. 21.  In fact, that is Plaintiffs' only

response to Defendants' argument that Count Five should be dismissed.  It is not clear whether

Plaintiffs are abandoning these claims, but, in any event, the Court agrees with Defendants that

Plaintiffs have failed to plead an actionable claim under § 1983 at Count Five.

Plaintiffs' allegations make it difficult to identify the nature of the § 1983 claim or claims

Plaintiffs purport to raise in Count Five.  They seem to base the claims on Ms. Fleming's visitation

ban, Mr. Fleming's time in disciplinary custody, and possibly Defendants' reliance on the NARK II

test kit.  They do not indicate how this behavior implicated any specific Eighth or Fourteenth

Amendment rights.  The Court has already discussed at length that the facts alleged by Plaintiffs do

not raise a Fourteenth Amendment due process claim under § 1983.  The same analysis would apply

to any due process-based claims Plaintiffs seek to assert at Count Five.

Plaintiffs' claims fare no better under the Eighth Amendment, which protects individuals

from cruel and unusual punishment.  "[T[reatment a prisoner receives in prison and the conditions

under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v.*

*Brennani*, 511 U.S. 825, 834 (1994).  To establish an Eighth Amendment claim with respect to the

conditions of his or her confinement, a prisoner must plead and ultimately prove that he or she has

been deprived of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.  The

denial of visitation access to a particular person does not constitute such a deprivation.  *See, e.g.,*

---

[13] Such a claim would be improper against the named defendants in any event.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

*Staton v. Britton*, 2013 WL 622607, \*3 (W.D. Pa. Jan. 25, 2013), *report and recommendation adopted*, 2013 WL 637901 (W.D. Pa. Feb. 20, 2013); *Navin*, 843 F. Supp. at 504. *See also Henry*, 131 Fed. Appx. at 850. While courts have suggested that a permanent ban on *all* visitation might constitute cruel and unusual punishment, *see Henry*, 131 Fed. Appx. at 850 (citing *Overton*, 539 U.S. at 137), that is not what is alleged here. Likewise, detention in a RHU, without more, generally is insufficient to establish an Eighth Amendment violation. *See Cook v. Corbett*, 2015 WL 4111692, \*6 (E.D. Pa. July 8, 2015). As to the use of the NARK II test, this does not seem to have been done to punish either Mr. or Ms. Fleming; they, in fact, plead that it is widely used by the staff at SCI-Albion, albeit incorrectly.

Accordingly, Plaintiffs have failed to plead an actionable § 1983 claim at Count Five. Accordingly, the Court will dismiss this count.

V.      Leave to Amend

The Court of Appeals for the Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *See Phillips*, 515 F.3d at 245; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

For the reasons discussed, Plaintiffs have failed to plead a deprivation of any protected right under the First, Eighth, or Fourteenth Amendments at Counts One, Two, Four, and Five. These counts fail not for lack of detail; they simply allege conduct not actionable under § 1983. Accordingly, amendment would be futile, and these counts will be dismissed with prejudice. This is particularly appropriate given that the complaint has been amended twice already in this case.

In contrast, the Court finds that amendment of Count Three may cure the deficiencies regarding Plaintiffs' attempt to raise a retaliation claim. As discussed, leave to amend this claim is

appropriate because the Second Amended Complaint taken as a whole indicates that Plaintiffs may be able to allege facts to support such a claim.  Therefore, Count Three will be dismissed without prejudice, and Plaintiffs will be granted leave to file a third amended complaint as to this claim alone. Plaintiffs are reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, *1 n.1 (W.D. Pa. Aug. 1, 2018).  Plaintiffs are also reminded that any amended complaint is subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

VI.     Conclusion

Given the foregoing, the Defendants' Motion to Dismiss (ECF No. 22) is GRANTED as follows:

1.      Counts One, Two, Four, and Five will be DISMISSED, with prejudice; and

2.      Count Three will be DISMISSED, without prejudice.

An ORDER follows.

## ORDER

Defendants' Motion to Dismiss [ECF No. 22] is **GRANTED**.  Counts One, Two, Four, and Five of the Second Amended Complaint are dismissed with prejudice.  Count Three of the Second Amended Complaint is dismissed without prejudice.  Plaintiffs are granted leave to file an amended complaint as to Count Three within twenty (20) days of this Memorandum Opinion and Order.  If no such amended complaint is filed, the Court will conclude that Plaintiffs have abandoned any intent to amend Count Three and will dismiss this remaining claim with prejudice.

So ORDERED this 30th day of June, 2020.

RICHARD A. LANZILLO
United States Magistrate Judge