IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| CHRISTA FLEMING, AND DEMETRIOUS FLEMING, HUSBAND AND WIFE, ) ) ) ) Plaintiffs ) ) vs. ) ) PENNSYLVANIA DEPARTMENT OF ) CORRECTIONS, JOHN WETZEL, ) SUPERINTENDENT MICHAEL CLARK, ) RYAN SZELEWSKI, PAUL ENNIS, ) LIEUTENANT FLOYD, MAILROOM ) SUPERVISOR TAMMY WHITE, ) CAPTAIN HOWIE SISSEM, CAPTAIN ) EARL JONES, LIEUTENANT OCHS, ) MICHELLE THARP, MAJOR MEURE, ) AND SCI-ALBION RHU GUARD, ) ) Defendants ) ) | 1:19-cv-00113-RAL RICHARD A. LANZILLO UNITED STATES MAGISTRATE JUDGE MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 53] |

I.    Introduction

Plaintiffs Christa and Demetrious Fleming (the Flemings) commenced this action against

the Pennsylvania Department of Corrections (DOC) and ten of its employees. Demetrious

Fleming is an inmate in the custody of the DOC at its State Correctional Institution at Albion

(SCI-Albion). Christa Fleming is his spouse. Proceeding *pro se*, they asserted claims against the

Defendants pursuant to 42 U.S.C. § 1983 for violations of various of their constitutional rights.

The Court dismissed all claims against the Defendants in two previous memorandum opinions

and orders on motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF

Nos. 38, 45. The Flemings amended their complaint for a third time, and another motion to

dismiss led the Court to dismiss all but one claim in the operative third amended complaint: a retaliation claim against Superintendent Michael Clark (Clark), Deputy Superintendent Paul Ennis (Ennis), Hearing Examiner Ryan Szelewski (Szelewski), and Captain Earl Jones (Jones). ECF No. 45.

Those remaining Defendants answered and filed the pending motion for summary judgment along with a supporting brief, concise statement of material facts, and appendix of exhibits. ECF Nos. 47, 53–56. The Flemings filed a brief in opposition [ECF No. 60] but they failed to file a responsive concise statement of material facts in accordance with the Court's local rules. *See* LCvR 56(C). This failure prompted the Court to issue a show cause order to correct their deficiency. ECF No. 61. The Flemings filed a responsive concise statement, but it only responded to eleven of the sixty paragraphs of the Defendants' concise statement, and only cited to record materials in four of the responsive paragraphs. ECF No. 62. Consequently, except for paragraphs 21, 35, 48, and 49, the facts in the Defendants' concise statement are deemed admitted for purposes of the instant motion. *See* LCvR 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts…will…be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."); Fed. R. Civ. P. 56(e); *Keith v. Charter Commc'ns, Inc.,* 2020 WL 2394997, at *2 (W.D. Pa. May 12, 2020); *Carpenters Combined Fund, Inc. by Klein v. Lucci*, 2017 WL 4023317, at *3 (W.D. Pa. Sept. 13, 2017) ("the Court will consider as contested the specifically challenged facts by [a party] where they are adequately supported by the record.").

2

For the reasons below, the Court will grant the Defendants' motion.[1]

II.    Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *See Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *See Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies his or her burden of identifying evidence that demonstrates the absence of a genuine issue of material fact,

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331 and 1343. The parties have consented to the jurisdiction of a United States Magistrate Judge, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1). ECF Nos. 27, 29, 30. *See also* Fed. R. Civ. P. 73.

3

the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party may also rely on the lack of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

When considering a motion in a *pro se* plaintiff's case, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, just because a non-moving party is proceeding *pro se*, he is not relieved of their "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

The Court also may consider evidentiary materials in the record beyond the parties' concise statements and responses. *See Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 661 (W.D. Pa. 2019) ("rely[ing] on the record as a whole to determine the applicable material facts"). *See also King v. Pa. Dep't of Corr.*, 2020 WL 2897019, at *1 (W.D. Pa. June 1, 2020). For example, the Court may consider the factual statements in the Flemings' verified complaint, but only when

4

they are based on their personal knowledge. *Jackson v. Armel*, 2020 WL 2104748, at \*5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion)). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings"); *Boomer v. Lewis*, 2009 WL 2900778, at \*2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").

III.    Undisputed Facts

Officials at SCI-Albion received a piece of mail addressed to Mr. Fleming from Mrs. Fleming on May 31, 2018.[2]  ECF No. 56-1, p. 26.  It contained an obituary and five pages of photographs.  During their examination of the mail, security staff noticed that portions of the paper appeared to have been stained by an unknown liquid.  *Id.*, p. 27.  They then confiscated the mail and forwarded it to the security office.  *Id.*, pp. 27, 32, 34.  Non-defendant officer Silloway used a NARK II field test kit on a portion of the paper cut from the photographs which returned a positive result for the presence of K-2, a synthetic cannabinoid.[3]  *Id.*, pp. 27, 36

With this information, Floyd—a lieutenant in the security office—began an investigation. He knew that Mrs. Fleming contacted SCI-Albion officials to ask why the mail was seized the day after it arrived.  *Id.*, pp. 27, 38.  She had accurately described the letter's contents and

---

[2] Each declaration and affidavit in the record satisfied the requirements of 28 U.S.C. § 1746 for use in federal court.

[3] A synthetic version of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana, K-2 (or spice) is a mixture of plant material sprayed with synthetic psychoactive chemicals. "Spice/ K2, Synthetic Marijuana," UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last accessed April 22, 2022).

confirmed it was sent from her street address. *Id.* Floyd interviewed Mr. Fleming that day. *Id.*
He stated that he had been expecting mail with a description that matched the seized letter's
contents. *Id.* Later that day, Floyd issued Misconduct Report No. B829664, incorporating this
information and charging Demetrious Fleming with possession or use of a dangerous or
controlled substance and unauthorized use of the mail or telephone. *Id.*, pp. 27-28, 40.

    The suspected discovery of K-2 and issuance of a misconduct caused at least three things
to happen.  First, officials transferred Mr. Fleming from general population to the Restricted
Housing Unit (RHU). *Id.*, p. 28.  Hearing Examiner Szelewski held a disciplinary hearing on that
misconduct five days later. *Id.*, p. 29. Szelewski found Mr. Fleming guilty of both charges.  He
sanctioned him to seventy-five days of disciplinary custody time in the RHU.

    Second, Floyd requested that Clark suspend Mrs. Fleming's visitation privileges as a
result of suspected drug smuggling. ECF No. 56-1, pp. 6, 20.  Clark reviewed the packet of
information that Floyd sent him, including the misconduct charges against Mr. Fleming.  That
same day, Clark concurred in Floyd's request and terminated her visitation privileges
indefinitely. ECF No. 56-1, pp. 6, 22.  When deciding this matter, Clark also knew that by 2018,
there had been a spike of drugs into DOC facilities, including SCI-Albion. ECF No. 56-1, p. 5.
Clark knew that soaking drugs into paper and then sending them through the mail was one
method of smuggling drugs, particularly synthetic K-2, into DOC facilities. *Id.* This practice
had occurred at other correctional facilities throughout the country. *Id.*

    Third, Jones sent the DOC's Bureau of Investigation and Intelligence (BII) information
about the confiscated mail and requested assistance investigating. ECF No. 56-1, p. 42, 45.  BII
opened an investigation and assigned non-defendant BII Criminal Investigator Michael Glenn,
Sr. (Glenn) to the case. *Id.* BII officials decided to have the mail tested at a Pennsylvania State

Police Crime Laboratory. *Id.*, p. 42. At SCI-Albion, Floyd gave Glenn the mail on June 8, 2018. *Id.*, pp. 29, 42. That day, Glenn submitted the mail to the Pennsylvania State Police's Erie Regional Laboratory for drug testing and fingerprint analysis. *Id.*, pp. 43, 47. It typically takes several months before the lab returns testing results. *Id.*, p. 43.

At an unspecified date after the mail's confiscation but before the June 8 misconduct hearing (the exact date is not supported by competent evidence),[4] Mrs. Fleming contacted an official at the DOC's Central Office about what she said were false allegations of drug smuggling. ECF No. 56-1, p. 28. As a result, BII opened an investigative file on the matter she raised. *Id.*

Meanwhile, Mr. Fleming appealed his misconduct. *Id.*, p. 29. Clark and Floyd learned on August 7, 2018, that the Chief Hearing Examiner had vacated the misconduct because the evidence presented did not establish that Mr. Fleming knew that Mrs. Fleming had intended to introduce controlled substances into SCI-Albion by sending him a piece of adulterated mail. *Id.*, pp. 7, 29. The security office at SCI-Albion reviewed the decision by the Chief Hearing Examiner and concluded that the misconduct was vacated because it could not be established that Demetrious Fleming knew that drugs had been allegedly incorporated into the mail. *Id.*, pp. 7, 29. Security office officials then marked Mr. Fleming's misconduct as "exonerated." *Id.*, pp. 7, 29; ECF No. 56-2, pp. 2-3.

On September 12, 2018, after Mrs. Fleming heard that her husband's misconduct had been vacated, she called SCI-Albion to have her visitation rights restored. ECF No. 56-2, p. 5.

---

[4] Assertions of fact in the responsive concise statement required by Local Rule 56.1 are not themselves evidence but must be supported by citation to competent record evidence. *See Moeller v. Township of N. Strabane*, 2008 WL 3072975, at *1 n.2 (W.D. Pa. Aug. 1, 2008).

Jones and Clark knew of this by email. *Id.* Mr. Fleming also requested restoration of his wife's

visitation privileges that day. However, because officials did not conclusively know at that point

whether Mrs. Fleming had knowingly tried to introduce drugs into the facility, it was decided

that they would await the results of the testing from the forensic crime lab before taking any

further action. ECF No. 56-1, pp. 7, 29; ECF No. 56-2, pp. 5-6.

On December 12, 2018, the Pennsylvania State Police informed Agent Glenn that no

controlled substances were detected on the mail. ECF No. 56-1, pp. 43, 50. The next day, Glenn

communicated the results to Floyd and SCI-Albion's Acting Security Captain, Timothy

Anderson, and the BII closed its investigation. *Id.*, p. 43; ECF No. 56-2, p. 9. Clark learned that

day of the negative drug test. *Id.*, p. 7; ECF No. 56-2, p. 8. The next day, he reinstated Mrs.

Fleming's visitation privileges and sent a letter to inform her of this action. *Id.*, pp. 7, 30; ECF

No. 56-2, p. 8.

IV.    Discussion

    A.    The Defendants Are Entitled to Summary Judgment on the Retaliation Claims.

To support a retaliation claim, a plaintiff must produce evidence that (1) he or she

engaged in protected conduct; (2) officials took an adverse action against the plaintiff that was

"sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and

(3) the existence of "a causal link between the exercise of his constitutional rights and the

adverse action taken against him." *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001)

(quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell

v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). An "adverse action" is one that would "deter a

person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*,

229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.

2000)). *See also Jackson v. Carter*, 813 Fed. Appx. 820, 825 (3d Cir. 2020) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) ("discarding an inmate's personal and legal property could be considered an 'adverse action.'"). Further, retaliatory motive can be shown with direct evidence or inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). And "'[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). Still, a court may not infer retaliatory motive "absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity." *Griffin-El v. Beard*, 2013 WL 228098, at \*5 (E.D. Pa. Jan. 22, 2013) (citing *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984)).

In its opinion on the Defendants' motion to dismiss the third amended complaint, the Court identified the following factual allegations as supporting prima facie retaliation claims against Clark, Ennis, Szelewski, and Jones. *See* ECF No. 45, pp. 12-13. Clark knew of the parallel BII investigation but still he banned Mrs. Fleming from visiting the prison, moved Mr. Fleming from disciplinary custody status to administrative custody status, and did not reinstate their visitation rights until mid-December. ECF No. 39, ¶¶ 8, 48, 101, 103-04. Ennis similarly did not act to reinstate their visitation rights even though he could have. *Id.*, ¶¶ 55, 112-13. He also promised that Mr. Fleming would be found guilty before the hearing. *Id*, ¶ 110. Szelewski found Mr. Fleming guilty of the misconduct despite knowing that they had contacted the BII, that the BII had started an investigation and found Mr. Fleming's version of the events credible.

9

*Id.*, ¶ 13, 47-48, 50–52, 105–07, 116.  Jones knew of the pending BII investigation and that Mr. and Mrs. Fleming were being punished for requesting their mail, yet he still imposed sanctions on their visitation privileges.  *Id.*, ¶¶ 53, 108.

The Defendants do not dispute that the evidence supports a prima facie claim of retaliation, although they challenge whether the Flemings have supported the personal involvement of certain Defendants.[5]  Instead, their principal argument in support of summary judgment is that they "would have taken the same actions notwithstanding Plaintiffs' asserted protected activity for legitimate penological reasons." ECF No. 54, p. 8.  As explained below, the record establishes the Defendants' "same decision" defense and their entitlement to judgment as a matter of law.

"If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *See Cooper v. Garman*, 2021 WL 4033113, at *8 (M.D. Pa. Sept. 3, 2021) (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).  Put differently, "[a] defendant may defeat the claim of retaliation by showing that [he] would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

All four remaining Defendants have sustained their burden on the same decision defense. While Szelewski may have believed Mr. Fleming's testimony at the hearing that he and his wife

---

[5] That said, the Defendants do argue that the record does not support a genuine issue of material fact as to the personal involvement of Ennis or Jones in any adverse action. ECF No. 54, p. 11-12. The Court does not address this argument because the same decision defense entitles the Defendants to judgment in their favor.

did not try to smuggle K-2 through the mail, Szelewski acted reasonably within his discretion to rely on the positive field test and corroborating evidence to find Mr. Fleming guilty of the misconduct. Afterwards, when the DOC's Chief Hearing Examiner vacated the misconduct against Mr. Fleming, Clark, Ennis, and Jones were still waiting for the results of the tests run on the mail by the Pennsylvania State Police lab. They were entitled to, and did, err on the side of caution in support of the legitimate penological interest in preventing a visitor from smuggling drugs during an in-person visit. *See Henry v. Dep't of Corr.*, 131 Fed. Appx. 847, 851 (3d Cir. 2005) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). So even if Clark, Ennis, and Jones knew of a parallel BII investigation initiated by Mrs. Fleming's contacts with BII personnel, their decision to wait to reinstate Mrs. Fleming's visitation privileges was reasonable.

This, however, does not conclusively establish the same decision defense. Upon such a showing that the defendants would have taken the same action, the burden shifts back to the plaintiff to (1) produce "other evidence" of the defendant's retaliatory motive, and (2) demonstrate that the violation of prison policy was "not so 'clear and overt'" that the court can conclude that the defendant would have taken the same action despite this evidence. *Watson*, 834 F.3d at 426. If the plaintiff can do this, the burden of proof would revert to the defendant, and the entry of summary judgment for the defendant would be inappropriate. *See Carter v. Slater*, 2021 WL 5605289, at *7 (W.D. Pa. Nov. 30, 2021).

The Flemings have not gone beyond their pleadings to identify other competent record evidence to demonstrate a genuine issue of material fact as to retaliatory motive. *See Celotex*, 477 U.S. at 324. It is undisputed that the Defendants had reason to believe that the Flemings had tried to smuggle drugs into the prison. The positive field test for K-2, the appearance of the liquid stains on the mail, and corroborating evidence from the Flemings provided a reasonable

basis for their belief. What's more, upon learning that the lab results were negative for drugs, Clark promptly reinstated Mrs. Fleming's visitation rights the next day. While the Flemings introduced evidence seeking to cast doubt on the reliability of the NARK II field test, this does not overcome the Defendants' reasonable reliance on the field test's positive result when making their decisions and their legitimate penological "goal of deterring the use of drugs…within the prisons." *See Bailey v. Kauffman*, 2022 WL 1115136, at *2 (3d Cir. Apr. 14, 2022) (quoting *Overton*, 539 U.S. at 134) (prison officials reasonably relied on a NARK II field test's positive result on mail when restricting prisoner's visitation rights). Thus, the Flemings have failed to show that the relevant DOC policies against the introduction of drugs into the prison or the Defendants' reliance on the initial field test results were pretexts for retaliation. *See Watson*, 834 F.3d at 426. The same decision defense entitles the Defendants to summary judgment on the Flemings' retaliation claims.

B.      The Flemings Have No Valid Claim for Failure to Intervene to Stop Retaliation.

The Defendants also argue that Jones is entitled to summary judgment on the Flemings' claim that he had a duty to intervene in Mr. Fleming's misconduct hearing and stop Szelewski from imposing sanctions once he learned of BII's investigation. ECF No. 45, p. 12. They raise the defense of qualified immunity. *Id.*, p. 13. This defense provides that a state officer is shielded from a suit for monetary damages under § 1983 unless "the official violated a…constitutional right," and "the right was clearly established at the time of the challenged conduct." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (cleaned up). While the Court is skeptical that such a claim standing apart from a cause of action for retaliation against Jones

survived its most recent opinion on the motion to dismiss the third amended complaint [ECF No. 45],[6] the Court will address this claim in the interest of thoroughness.

This Court recently decided that a corrections officer was entitled to qualified immunity on a similar claim of failure to intervene in retaliation. *See Armstrong v. Furman*, 2020 WL 5545270, at \*6-7 (W.D. Pa. Sept. 16, 2020) (citing *Weimer v. Cty. of Fayette*, 972 F.3d 177 (3d Cir. 2020)). There, the Court wrote,

> As the Third Circuit made clear in *Weimer*, because it has not extended the duty to intervene beyond situations involving excessive force, in cases where the facts are dissimilar from those in the excessive force cases, those excessive force cases cannot be used to put defendants on notice that their actions were unlawful. In this case, the facts are markedly dissimilar to those in excessive force cases. There was no use of excessive force or similar threat to Plaintiff's physical safety. Accordingly, Dupont was not on notice...and cannot be said to have violated a clearly established right. Thus, Dupont has qualified immunity on the instant the failure-to-intervene claim.

*Armstrong*, 2020 WL 5545270, at \*7. This decision, issued after the events at issue in the Flemings' third amended complaint, "could not have given fair notice" that this alleged constitutional right was clearly established. See *Mammaro v. N.J. Div. of Child Protection & Permanency*, 814 F.3d 164, 170 n.2 (3d Cir. 2016) (citing *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam)). Thus, Jones is entitled to qualified immunity on the failure to intervene claim.

---

[6] *See Pub. Interest. Rsch. Group of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation....Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (citations omitted).

C.  Conclusion

For these reasons, the Court will GRANT the Defendants' motion for summary judgment at ECF No. 53.  A separate order follows.


DATED this 27th day of April, 2022.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

14